EDWIN J. LAUER, APPELLANT, v. HERMAN COPAKEN AND DOROTHY CO-PAKEN, RESPONDENTS.—244 S. W. 2d 422.

Kansas City Court of Appeals. Opinion delivered November 5, 1951.

*Ira B. Burns,* and *Horace G. Pope,* for appellant.

*Clyde J. Linde, Billy S. Sparks,* for respondents, *Langworthy, Matz, & Linde,* of Counsel.

SPERRY, C.—Plaintiff was a guest of tenants occupying a building owned by defendants, and sued for injuries sustained when he fell down a flight of stairs on the premises. Judgment was for plaintiff in the sum of $2500. The court sustained defendants' motion for new trial and plaintiff appeals.

Plaintiff testified to the effect that, at the time his injuries were received, he was a salesman; that he was eligible for membership in Jack Willoughby Post, Veterans of Foreign Wars, located on the third floor of defendants' building in Kansas City, Missouri; that he was desirous of becoming a member of said post; that he had visited its club rooms three or four times and, on Sunday night, December 14, 1947, after work, at about 6:00 p.m., he entered the building and walked up the stairway into the club rooms; that the club sold beer and he intended to drink some beer before dinner; that he drank two

or three bottles of beer and bought a few bottles of beer for others; that he was desirous of making a good impression; that he wanted to become a member and that members of the club were working on him to join; that he later became a member; that his visit was chiefly for the purpose of becoming better acquainted with the members of the club with a view toward membership; that after an hour or two he left the club, intending to eat dinner, then go home; that it was then dark and there was no light at the bottom of the stairway; that, as he was descending, he met two ladies, about five steps from the bottom; that in making way to permit them to pass, he lost his balance, grasped for a railing on the right hand side of the stairway and, there being no railing, was unable to recover his balance; that he fell to the bottom of the stairway, crashing into the lower panel of the entrance-door; that the end of his nose was severed, requiring a skin graft from his shoulder, the bridge was cut, and he suffered multiple lacerations about the face.

He stated that he was dazed from the fall and from injuries sustained; that he was bleeding profusely; that he walked about half a block east, crossed the street and came back west; that someone stopped him and sat him in a chair across the street from the club, in front of Hamilton's Cafe; that an ambulance came and took him to General Hospital where his injuries were treated. He was released five days later and lost about one month from his work.

He admitted that he stated, on deposition, that he was in the club room thirty or forty minutes but said that he might have been there that long or longer. Records indicated that he was admitted to the hospital at about 10:30 p.m., but plaintiff stated that he actually arrived sooner and was later taken to the main hospital. However, it is not claimed that the weight of his testimony, on all points, was not for the jury to determine.

Mr. Quick, a member of the club, testified for plaintiff to the effect: that he was at the club the night plaintiff was injured; that he heard about the injury at about 8:00 p.m.; that there was no railing along the right hand side of the stairway, coming down; that there was no light at the bottom of the stair; that when he left the building, at about 9:00 p.m., he observed that the bottom section of the entrance-door, which was of glass, had been broken, and that there was blood on the door.

Roy Grubb, a member of the club, testified to the effect that he was in Hamilton's Cafe, across the street from the club entrance, about 8:00 p.m.; that he saw plaintiff walking east on 31st Street; that he walked east about one-half block, then crossed the street, walked back west, and fell at the corner; that plaintiff was bleeding profusely and walking rapidly; that witness walked behind plaintiff, tried to catch him to see what was wrong with him, but that he fell before he caught him; that plaintiff was walking straight, holding his hand to his face;

that blood was running from his face and hand; that police came, and an ambulance arrived and took plaintiff away; that the glass of the club entrance-door was broken out and there was blood around the doorway.

Another member of the club, Mr. Hasenyager, testified to the effect that he was in Hamilton's Cafe, at about 8:00 p.m., when someone asked for a member to give plaintiff aid; that he went out to where plaintiff was standing; that he was bleeding profusely; that he put him in a chair and applied ice and a cold towel to his face to stop the flow of blood; that an ambulance came and took him to hospital; that witness was at the club and saw plaintiff leave, at around 7:30; that when witness passed down the stairway he noticed that the lower half of the doorway was broken out and that there was blood on the sidewalk and on the door.

It is conceded that there was no railing along the right hand side (descending) of the stairway; that the building was constructed many years ago; and that Kansas City's building code, which was introduced in evidence, requires that stairways, such as the one here involved, have hand railings on both sides. However, the building code became effective long after this building was constructed and it was not shown that the building had been remodeled since its original construction. The evidence showed that the stairway is 58 inches wide; that there were 22 steps; that the risers were 7½ inches in height; that the steps were 10 inches in width; that plaintiff's shoes were 12 inches in length, so that they would protrude beyond the "nose" of the steps.

A policeman, testifying for defendants, stated that plaintiff was intoxicated when the ambulance arrived.

The court granted a new trial because of error, as he stated, in Instruction 1, given for plaintiff. However, defendants urge that plaintiff failed to make a submissible case for the reason that the building code, requiring two hand railings along a stairway such as this, is not applicable to defendants' building.

Plaintiff's case, as tried and submitted, is bottomed on the fact that defendants failed to have constructed and maintained a hand rail along both sides of the stairway, as required by the Kansas City Building Code, 1946-1947. (There was none along the right hand side, descending). If they were not required to do so, by the building code, the action of the trial court in granting a new trial should be affirmed.

In the Building Code, Kansas City, Missouri, 1946-1947, Second Edition, the following appears:

"Sec. 102, Par. (a) Purpose;

This Ordinance is hereby declared to be remedial and shall be construed to secure the beneficial interest and purposes thereof which are public safety, health and welfare, and safety to life and property from fire and other hazards incident to the design, construction, alteration, repair, removal, demolition, or use of

building or structures and their appurtenant mechanical and electrical equipment. As a means of securing such beneficial interest and purposes, this ordinance sets forth minimum requirements for :—

1. Structural strength and stability ;
2. Means of egress ;
3. Fire protective construction and devices ;
4. Light, ventilation, and sanitation ;
5. Mechanical and electrical equipment ;
6. Regulation of the use and maintenance of buildings and their appurtenant equipment.

   \*     \*     \*     \*     \*     \*     · \*     \*

Section 103, Scope.

All buildings hereafter erected in, or moved into, the City of Kansas City, Missouri, shall conform to all requirements of this Code.

Additions, alterations, repairs, and changes of use or occupancy in all buildings shall comply with the requirements for new buildings except as otherwise provided in Section 104 and Chapter 16 of this Code.

Section 104. Application to Existing Buildings.

The following specified requirements shall apply to heretofore existing buildings which for any reason do not conform to the requirements of this Code for new buildings:

(a) Major Alterations and Repairs. Except as provided in Chapter 16, when alterations and repairs in excess of 50 per cent of the value of an existing building are made within any period of 12 months, the entire building shall be made to conform with the requirements for new buildings. Any existing building which for any reason whatsoever, requires repairs, at any one time, in excess of 50 per cent of the value thereof, shall be made to conform to the requirements of this Code or shall be demolished. Repair work done to maintain the structural integrity of the foundations will not be included in the 50 per cent repairs allowable. The value of a building shall be the estimated cost of replacing the building in kind. Value shall be determined by the Building Commissioner, but the owner may appeal the Commissioner's decision as provided in this Code.

(b) Additions. Any existing building not covered by the preceding paragraphs, which has its floor area or its number of stories increased or its use or occupancy changed in any way from its existing use or occupancy shall be provided with stairways, emergency exits and fire protection facilities as required in this Code for buildings hereafter erected for similar uses or occupancies.

(c) Structural Alterations and Repairs. Where any alteration

or repair is made to the structural portion of any building and the uncovered structural portion discovered to be unsound, the altered structural portion shall be made to conform to the requirements of this Code for new Buildings.

(d) Non-Structural Alterations and Repairs. Minor non-structural alterations, repairs and changes may be made with the same materials of which the building is constructed provided, that not more than 35 per cent of the roof covering of any building shall be replaced in any period of 12 months unless the new roof covering is made to conform to the requirements of this Code for new buildings.

Sec. 105. Maintenance. The requirements contained in this Code, covering the maintenance of buildings, shall apply to all buildings now existing or hereafter erected. All buildings shall be maintained in a safe condition, and all devices or safeguards required by this Code at the time a building is erected, altered, or repaired, shall be maintained thereafter in good working order."

The provisions of the code concerning stairway railings could have been made to apply to the building here involved but if they are not applicable, under the language used, we cannot make them so. The code is remedial and its provisions should be liberally construed; but that does not authorize an amendment of the code by judicial construction.

Section 103 of the code provides that its provisions shall apply to all buildings "*hereafter erected in, or moved into,*" Kansas City; but Section 104 states the circumstances and conditions under which its provisions shall apply to "existing buildings."

The evidence discloses that the building involved in this case existed for many years prior to the date the "Building Code" became law, and that it has undergone no major structural changes, additions, or remodeling since that date, so as to make it subject to the provisions of the ordinance with reference to stairway hand railings. It is not suggested that the stairway construction does not conform to all requirements as of the date the building was constructed, nor that it has not been maintained in good working order, as required by Section 105.

Since plaintiff submitted the case on an alleged violation of the provision of the 1946-1947 Building Code, which code is inapplicable, the judgment granting a new trial should be affirmed. *Bour, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment granting a new trial is affirmed. All concur.